**M.K. ASSOCIATES, Plaintiff,**

v.

**STOWELL PRODUCTS, INC.,
Defendant.**

Civ. No. 87–0270 P.

United States District Court,
D. Maine.

Oct. 18, 1988.

Matthew S. Goldfarb, Portland, Me., for plaintiff.

David Perkins, John Wipfler, Pierce Atwood, Portland, Me., for defendant.

### MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

#### I. *Introduction*

M.K. Associates, a seller of wood products, has brought an action to recover the remainder of the purchase price due from a sale of ash dowels to the defendant Stowell Products, Inc. The defendant claims that the plaintiff breached the contract because the dowels were defective. The defendant argues that it is entitled to set off the remaining amount due as damages caused by the defective goods.

The case was tried before the court on September 19, 1988. For the reasons set forth below, the court finds for the plaintiff. The findings of fact and conclusions of law follow.

#### II. *Findings of Fact*

From December, 1986 through February, 1987, Stowell Products, through its purchasing manager, Wayne Curley, made a series of orders for ash dowels from M.K. Associates. The dowels were delivered during the period from December, 1986 to March, 1987. Stowell Products intended to use the dowels to manufacture products to fill a contract with another company, Mirro/Foley Corp., due in late August, 1987. Although Stowell Products made periodic payments to M.K. Associates on these orders up through the fall of 1987, it was substantially in arrears as early as March, 1987. The parties have stipulated that the amount still due for the purchase and delivery of the ash dowels is $10,518.40.

The employee who received the orders from M.K. Associates noticed that some of the dowels were defective because they were "out of round," and he reported this defect to Wayne Curley, the purchasing manager. The factory foreperson, Virginia Johnson, found she was unable to use the dowels because of the defects. From June to September, 1987, Johnson ran the dow-

els through a "seavey" machine in order to correct the defects. This corrective process enabled Stowell Products to use the dowels for the Mirro/Foley order, although the order was not shipped until September 25, 1987, about a month late.

In the spring of 1987, Wayne Curley, purchasing manager of Stowell Products, and Doug Bucy, general manager, had a series of conversations with M.K. Associates. These conversations discussed the fact that Stowell Products was behind on its payments for the order. Only one conversation, however, made any mention of problems with the dowels. This conversation occurred between Curley and Marshall Kates, owner of M.K. Associates, in March, 1987. At this time, Curley asked Kates if one of the orders could be cancelled because of problems in running the dowels through the production process. Kates answered that he couldn't cancel. They did not discuss the issue further.

Stowell Products made no other attempts to raise the issue of defects in the dowels to M.K. Associates. On September 2, 1987, M.K. Associates filed a complaint in this court for the remainder due from Stowell Products on the dowel order.

### III. *Conclusions of Law*

The issue in this case is whether Stowell Products is entitled to deduct damages for defects in the dowels purchased from M.K. Associates against the amount owed for the orders. The defendant does not dispute that Stowell Products accepted the dowels from M.K. Associates, and that it did not revoke this acceptance. Instead, the defendant decided to keep the dowels and use them in its business. *See* 11 M.R.S.A. §§ 2–606(1)(a)–(c), 2–608; *Intervale Steel v. Borg & Beck Div., Borg–Warner Corp.,* 578 F.Supp. 1081, 1086 (E.D.Mich. 1984), *aff'd,* 762 F.2d 1008 (6th Cir.1985) (goods generally considered accepted if used by buyer in manufacturing process after buyer knows of defects).

Nonetheless, accepting defective goods does not preclude a buyer from pursuing remedies for breach of contract due to defects in the goods. 11 M.R.S.A. § 2–607(2). "The buyer on notifying the seller of his

intention so to do may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." 11 M.R.S.A. § 2–717. A buyer claiming a breach of contract after accepting goods must, however, notify the seller of the breach within a reasonable time after discovery of the breach, or the buyer will be barred from any breach of contract remedy. 11 M.R.S.A. § 2–607(3)(a).

The critical question in this case, therefore, is whether the defendant gave timely notice of the breach of contract claim. What constitutes reasonable time depends on the particular circumstances of a case. 11 M.R.S.A. § 1–204. The policies underlying the requirement of timely notice are first, to enable the seller to cure or replace, second, to give the seller an opportunity to prepare for negotiation and litigation, and third, to ensure finality. J. White & R. Summers, *Uniform Commercial Code* 421–22 (2d ed. 1980). *See also In Re Morweld Steel Products Corp.,* 8 B.R. 946, 951 (W.D.Mich.1981) (quoting *Steel & Wire Corp. v. Thyssen Inc.,* 20 U.C.C.Rep. 892 (E.D.Mich.1976)). To further these purposes, "reasonable time" for notice is interpreted strictly for commercial buyers. *See* 11 M.R.S.A. § 2–607, Uniform Commercial Code (U.C.C.) Comment 4.

The defendant argues that notice of the breach was given by Wayne Curley, purchasing manager for Stowell Products, to Marshall Kates, owner of M.K. Associates, in their conversation in March, 1987. In this conversation, Curley told Kates that defects in some dowels were causing production problems, and Kates said he could not cancel the order. The defendant argues that Curley's conversation with Kates was sufficient notice. It is true that "no formality of notice is required." 11 M.R.S.A. § 2–717, U.C.C. Comment 2. "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." 11 M.R.S.A. § 2–607, U.C.C. Comment 4. Nevertheless, after Kates responded that he would not be able to cancel the order, Curley let the matter rest and

gave Kates no indication that Stowell Products would continue to protest the matter. No one from Stowell Products pursued it further. Therefore, the defendant did not give adequate notice that the transaction was still troublesome.

Moreover, the U.C.C. Comments emphasize that notice of a claim of breach is crucial. "The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation." 11 M.R.S.A. § 2-607, U.C.C. Comment 4. Even if the seller knows of defects in the goods, the buyer must notify the seller of the buyer's claim that the defects constitute a breach. *In re Morweld Steel Products Corp.*, *supra* at 952 (quoting *Standard Alliance Industries Inc. v. The Black Clawson Co.*, 587 F.2d 813 (6th Cir.1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979)). The requirement that a commercial buyer's notice must include an indication that the buyer considers the contract breached is consistent with the policies behind the notice requirement, which include ensuring finality for transactions and allowing the seller to prepare for negotiation and settlement. In the conversation with Kates, however, Curley did not clearly let Kates know that Stowell Products considered the contract breached.

Finally, U.C.C. Comment 2 to 11 M.R.S.A. § 2-717 states that "any language which reasonably indicates the buyer's reason for holding up his payment is sufficient." Despite repeated conversations concerning late payments, no one from Stowell Products suggested to M.K. Associates that payments were being withheld to cover the costs of defects in the dowels.

Therefore, Stowell Products' only notice of the breach was in its answer to the plaintiff's complaint, filed on October 13, 1987, more than five months after the dowels were received and more than three months after the defendant began processing the dowels. The defendant argues that it was reasonable to wait until the Mir-ro/Foley order was completed in order to determine the total amount of damages.

The U.C.C. does not require, however, that the buyer give notice of the exact amount of damages that will be incurred. *See Custom Automated Machinery v. Penda Corp.*, 537 F.Supp. 77, 86 (N.D.Ill. 1982) (buyer not required to tell seller amount of damages as long as seller on notice of reason for withholding payment). At least by June, 1987, the defendant knew of significant costs that would be incurred by correcting the defective dowels. The defendant has given no reason to justify letting several months go by while it used the defective goods for its own business purposes before warning M.K. Associates that it considered the contract breached.

The defendant also claims that the delay was reasonable in light of the purposes of the notice requirement, since ample time for settlement remained after the plaintiff began this litigation. Courts have held, however, that waiting until the seller sues for the purchase price to claim a breach of contract fails to satisfy the requirement of timely notice. *In re Morweld Steel Products Corp.*, *supra* at 951–53; *Pace v. Sagebrush Sales Co.*, 114 Ariz. 271, 560 P.2d 789 (1977).

### IV. *Conclusion*

The defendant accepted and used the dowels from M.K. Associates despite any defects it found. The defendant failed to notify the plaintiff of any claim of a breach of contract until the plaintiff began this litigation. This delay was unreasonable, and therefore the defendant is barred from deducting damages for breach of contract.

Accordingly, the Court hereby *ORDERS* that judgment in this action be entered for the plaintiff in the amount of Ten Thousand Five Hundred Eighteen Dollars and Forty Cents ($10,518.40), plus interest and costs as provided by law.